## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DOUGLAS J. JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-11-144-SPS** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

The claimant Douglas J. Jones requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled.  For the reasons set forth below, the decision of the Commissioner is hereby REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]"  42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations

implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§

404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision

to two inquiries: whether the decision was supported by substantial evidence and whether

correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th

Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"

*Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v.

NLRB*, 305 U.S. 197, 229 (1938).  *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th

Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the

Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he

substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity.  Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied.  If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born April 14, 1961, and was forty-nine years old at the time of the most recent administrative hearing. (Tr. 431, 548). He completed the tenth grade and attended special education classes (Tr. 145), and has worked as a trash collector (Tr. 498). The claimant alleges he has been unable to work since April 6, 2004 due to pain in his forehead, ringing in his ears, depression, short temper, neck and back pain, pain in joints, being hit in the head with a hatchet in 1991 and that event's residual effects, and dark circles under his eyes. (Tr. 140, 551).

## Procedural History

On April 6, 2005, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Jack W. Raines conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 31, 2007. (Tr. 18-27). The Appeals Council then denied review, but this Court reversed on appeal in Case No. CIV-08-131-RAW-KEW and remanded the case for further proceedings. (Tr. 501-511). ALJ Kim D. Parrish held a hearing and determined that the claimant was not disabled in a written opinion dated December 22, 2010. (Tr. 491-499). The Appeals Council again denied review on August 3, 2010, so ALJ Parrish's December 22, 2010 opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20

-3-

C.F.R. §§ 404.981, 416.1481.  The claimant filed subsequent claims for Title II and Title XVI benefits on August 7, 2008, and in December 2008 was deemed disabled beginning September 1, 2007.

### Decision of the Administrative Law Judge

ALJ Parrish made his decision at step five of the sequential evaluation.  He found that the claimant had the residual functional capacity (RFC) to perform a full range of light work, 20 C.F.R. §§  404.1567(b) and 416.967(b), *i. e.*, he could lift/carry twenty pounds occasionally and ten pounds frequently, and sit/stand/walk six hours in an eight-hour workday, except that the claimant could only sustain concentration necessary for unskilled work.  (Tr. 494).  The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled from April 6, 2004 to August 31, 2007, because there was work in the national and regional economies that he could perform, *i. e.*, fast food worker, bench assembler, and conveyor line bakery worker. (Tr. 497-498).

### Review

The claimant contends that the ALJ erred: (i) by failing to properly evaluate his mental impairments, (ii) by failing to properly evaluate the opinion of state reviewing physician Dr. Margaret Meyer, and (iii) by failing to properly assess his RFC.  The Court agrees with the claimant's first contention, and the decision of the Commissioner is therefore reversed.

The claimant has the severe impairments of chronic knee pain, degenerative disc disease, alcohol dependence, and a mood disorder.  (Tr. 493).  In 1991, the claimant

-4-

suffered injuries to his head when his girlfriend hit him over the head with a hatchet approximately six times. (Tr. 169). In 2002, the claimant injured his right lower leg when it was pinned between a truck and trailer. (Tr. 199). An August 11, 2006 lumbar spine x-ray revealed extreme degeneration and heavy eburnation/sclerosis about the L2-L3 disc level. (Tr. 259).

On April 18, 2005, the claimant was admitted to Texoma Medical Center after he was found at home with a gun to his head and threatening suicide. (Tr. 220, 331). A psychiatric evaluation performed that day noted that he alleged problems with irritability, mood swings, and anger since his 1991 head injury, and that he drank excessively as a way to control his pain. (Tr. 223). He was diagnosed with an organic mood disorder and assessed a Global Assessment of Function (GAF) score of 29. (Tr. 224). Upon discharge from the hospital, the claimant had stabilized on medications, although notes indicate that he was "quite argumentative and demanding" as to getting pain medications, and he refused to go to a halfway house because he believed medications would eradicate his pain; he was assessed a GAF of 38. (Tr. 220-221). The claimant was also treated at Neighbor Care Clinic in Valley View, Texas, and nurse Thelma Hoehn completed a Medical Release form on June 29, 2005, stating that the claimant had a permanent disability due to severe headaches and dizziness, as well as his history of blunt trauma to the head and bipolar disease. (Tr. 228). On February 20, 2006, she completed an assessment of the claimant's ability to do work-related activities, indicating that the claimant could not work an 8-hour day at any level, even if permitted a sit/stand option. (Tr. 247). On July 8, 2005, Dr. Lawrence Sloan completed a mental status examination

and diagnosed the claimant with alcohol dependence; mood disorder due to history of head trauma, with depressive features; problems including economic, access to healthcare, and primary support group; and a GAF of 40, attributed to the claimant's homelessness. (Tr. 236). Dr. Sloan stated that the claimant's prognosis was poor, and that he appeared to have a history of chronic alcoholism. (Tr. 237). A state reviewing physician, Dr. Margaret Meyer, completed a Psychiatric Review Technique, finding that the claimant had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace, and one or two episodes of decompensation. (Tr. 369). Dr. Meyer noted that claimant's low GAF was due to homelessness and likely alcohol dependence, but stated that the claimant retained capacities on the attached RFC assessment because he reported not drinking before 5 p.m. so that he could perform tasks for friends during the day. (Tr. 371). The claimant's treating physician Dr. Glenn Sears drafted a letter on May 17, 2007 describing his medical history, failed attempts to suppress chronic headaches with medication, his dependence on opiates on a regular basis to manage his chronic pain, and that physical therapy provided little relief. (Tr. 420).

On October 23, 2008, Dr. C. Robin McGirk conducted a psychological evaluation of the claimant. He discussed the claimant's medical history, including increasing pain over the last seventeen years due to multiple head injuries. (Tr. 546-537). The evaluation assessed the claimant's thought process, thought content, perceptual abnormalities, mood and affect, sensorium and cognition, concentration, memory, insight and judgment, abstract reasoning ability, and sleep habits. Dr. McGirk noted specifically

-6-

that the claimant's past head injury was consistent with his reported personality changes, including angry outbursts and loss of emotional control.  (Tr. 538-539).  Dr. McGirk's diagnostic impression was that the claimant had a personality change due to head trauma, intermittent explosive disorder (secondary to head trauma probable), depressive disorder NOS secondary to chronic pain, stressors (including financial, family conflict, lack of medical treatment, and extreme chronic pain), and a GAF of 46.  (Tr. 540).

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as the medical evidence.  As to the claimant's mental impairments, the ALJ gave Nurse Hoehn's opinion little weight because she only saw the claimant twice, her treatment notes did not support significant restrictions, she was not a physician, and her statements as to the claimant's disability were an issue reserved to the Commissioner. (Tr. 496-497).  As to Dr. Sears, the ALJ found his letter of "limited value" because it provided no limitations helpful to determining the claimant's ability to function.  (Tr. 497).  The ALJ then described the claimant's hospitalization following his suicide attempt, including the GAF score of 38 upon discharge, and mentioned Dr. Sloan's mental status evaluation, findings, and assigned GAF of 40, but made no analysis as to either of these opinions.  He then cited Dr. Meyer's mental status assessment with favor, because that he agreed with it and it was consistent with his RFC assessment.  (Tr. 497).

The ALJ erred in analyzing the "other source" evidence as to the claimant's mental impairments.  Social security regulations provide for the proper consideration of "other source" opinions such as the ones provided by Dr. Sloan, Nurse Hoehn, and Dr. McGirk herein.  *See* 20 C.F.R. § 416.913(d) ("Other sources include, but are not limited

to . . . therapists."). S*ee also Holcomb v. Astrue*, 389 Fed. Appx. 757, 759 n.2 (10th Cir.

2010) (assuming without deciding that licensed professional counselors can also be

considered "other sources"); *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007)

(noting that other source opinions should be evaluated with the relevant evidence "on key

issues such as impairment severity and functional effects" and by considering 20 C.F.R.

§§ 404.1527(d), 416.927(d) factors in determining the weight of these opinions), *quoting*

Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *1, *6 (discussing considerations of

evidence from sources who are not acceptable medical sources and stating that

"[a]lthough there is a distinction between what an adjudicator must consider and what the

adjudicator must explain in the disability determination or decision, the adjudicator

generally should explain the weight given to opinions from these 'other sources,' or

otherwise ensure that the discussion of the evidence in the determination or decision

allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when

such opinions may have an effect on the outcome of the case.").  The relevant factors for

evaluating opinion evidence from other sources are: (i) the length of the relationship and

frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the

extent the source provides relevant supporting evidence; (iv) how well the source's

opinion is explained; (v) whether the claimant's impairment is related to a source's

specialty or area of expertise; and (vi) any other supporting or refuting factors.  *See* Soc.

Sec. Rul. 06-03p at *4-5; 20 C.F.R. §§ 404.1527(d), 416.927(d).

    In his written opinion, the ALJ applied the proper analysis to Nurse Hoehn's

opinion, but failed to apply the same analysis to Dr. Sloan's opinion.  (Tr. 496-497).

Because he failed to discuss the factors in connection with the Dr. Sloan's opinion, it is unclear whether he actually considered them. *See, e. g., Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.").  Further, the ALJ failed to even mention, let alone analyze and discuss, Dr. McGirk's 2008 consultative psychological examination, despite the fact that he mentioned it at the most recent administrative hearing when he stated to claimant's counsel, "Isn't that some of your best evidence to capture disability during that window?"  (Tr. 560).  Although the ALJ does not explain why he ignored Dr. McGirk's records, the Commissioner argues that the examination is not relevant because it was conducted outside the relevant time period of April 6, 2004 to August 31, 2007 , but the claimant correctly points out that Dr. McGirk's analysis discusses the effect of claimant's 1991 head injury, as well as other medical conditions that existed during the relevant time period.  *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  *See also  Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring

other parts, is improper.") [citations omitted];.*Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is significantly probative.") [quotation omitted].

Last, although the ALJ recited some of the GAF scores in the record, he failed to address their effect on his assessment of the claimant's RFC.  It is notable that the claimant was never assessed a GAF higher than 46.  "[A] GAF score between 41 and 50 indicates [s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e. g., no friends, inability to keep a job)."  *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) [quotation omitted] [unpublished opinion].  "Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," *Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003) [unpublished opinion], "[a] GAF score of fifty or less . . . *does* suggest an inability to keep a job." *Lee*, 117 Fed. Appx. at 678 [emphasis added], *citing Oslin*, 69 Fed. Appx. at 947.  Thus, the ALJ should have considered whether the claimant's substandard GAF scores were due to occupational factors.  *See, e. g., Givens v. Astrue*, 251 Fed. Appx. 561, 567 n. 4 (10th Cir. 2007) (noting that "the Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job[,]" but finding that "[e]ven assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors.") [quotation marks omitted] [unpublished opinion].  Instead, the ALJ wholly ignored all of the

claimant's mental health evaluations aside from the opinions of the state agency physicians.  *Ramirez v. Astrue*, 255 Fed. Appx. 327, 332 (10th Cir. 2007) ("'[T]he RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.'") [unpublished opinion], *quoting* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at * 7 (July 2, 1996) [emphasis added].

Because the ALJ failed to properly evaluate the claimant's mental impairments, the decision of the Commissioner is therefore reversed and the case remanded to the ALJ for further analysis of the claimant's mental impairments.  If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether  he is disabled.

### Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 10th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma